**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   LORI BUCCOLO,

                                        Chapter 7
                                        Case No. 05-30789  (RTL)

       Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

John J. Scura, III, Esq.
Scura, Mealey, Wigfield & Heyer, LLP, Applicant

Andrea Dobin, Esq.
Sterns & Weinroth, P.C.
Attorney for Thomas Orr, Trustee

Lori Buccolo,
Debtor, *Pro Se*

**RAYMOND T. LYONS, U.S.B.J.**

**INTRODUCTION**

      Scura, Mealey, Wigfield & Heyer, LLP (the "Law Firm"), have filed a second and final fee application as attorney for the Debtor from January 20, 2006 to May 14, 2008. The fees sought are $32,260.50 and expenses of $215.76.  The Debtor objects, suggesting a fee of $10,000.00 is sufficient.  The Chapter 7 Trustee objects only to allowing fees post-conversion as an administrative expense.  Due to the Law Firm's failure to communicate with its client and the

presence of billing deficiencies, the court will allow $22,582.35 in fees and $215.76 in expenses for a total of $22,798.11.  Of that, $13,000 is allowed as a chapter 13 priority administrative expense.

## JURISDICTION

This court has jurisdiction of this contested matter under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the United States Code to the bankruptcy court.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) concerning the administration of the estate.

## BACKGROUND

Lori Buccolo filed a petition under chapter 13 on June 24, 2005.  At the time she had sought divorce from her spouse, Bruce Buccolo, and had moved out of the marital residence.  Title to the residence was in her name alone and was valued at $850,000.  The mortgage had gone to foreclosure and she faced a sheriff's sale.  A judgment creditor had scheduled a second sheriff's sale.  Her estranged husband resisted selling the house and sought equitable distribution of it in the family court.

Ms. Buccolo's chapter 13 plan called for the sale of the residence within 12 months.  The value of the residence was estimated at enough to pay all secured, priority and general claims with a significant surplus for the Debtor.  Her plan was confirmed over the husband's objection.

The battles between the spouses continued for a year in both bankruptcy and family courts.  This court converted the case to chapter 7 on June 14, 2006, but the husband continued to resist sale and removal from the home despite this court's orders to that effect.

Frustrated by the lack of progress in the family court and the husband's thwarting a sale of the home, Ms. Buccolo decided to move back in and withdrew her complaint for divorce. She also reversed her position in the bankruptcy case. Rather than advocating sale of the residence, she sought to preserve it.

After her change in circumstances, her relationship with the Law Firm deteriorated. It withdrew as her attorney in June 2008.

The Law Firm had filed a first fee application covering the period from January 31, 2005, to January 20, 2006, in the amount of $16,477 for fees and expenses of $221.56. It was allowed without objection less a retainer of $2,194 previously paid. This second and final fee application covers nearly two and a half years from January 2006 until the Law Firm withdrew in June 2008. The fees sought are $32,260.50 and expenses of $215.76. Of this amount, $13,627 is for services after the case was converted to chapter 7 on June 14, 2006.

## *Post-Conversion Fees*

The Chapter 7 Trustee objects to any fees being allowed as an administrative expense after the case was converted from chapter 13 to chapter 7. The Trustee has identified $13,627 in fees charged after the June 14, 2006, conversion. In *Lamie v. U.S. Trustee*, 540 U.S. 526 (2004), the Court held that a debtor's attorney was not eligible to be paid from the estate for services rendered after conversion of a case to chapter 7. This amount cannot be allowed as an administrative expense entitled to priority under Section 507 of the Bankruptcy Code. 11 U.S.C. § 507.

However, all parties anticipate that all of Ms. Buccolo's creditors will be paid in full. Ms. Buccolo will most likely have to pay fees allowed to the Law Firm under any circumstances.

Section 329 of the Bankruptcy Code allows the court to monitor the legal fees incurred by debtors whether or not they are priority administrative expenses. 11 U.S.C. § 329. Therefore, the court will review both the pre-conversion and the post-conversion fees.

*Periodic Billing*

Ms. Buccolo points to the retainer agreement that says the Law Firm will provide "itemized bills from time to time." She claims that she did not receive a bill at any time during her bankruptcy case until this fee application was filed – over three years. She was shocked to see that between the first fee application and this final application, the Law Firm charged her $48,737.50 in fees and $437.32 in expenses for a total of 49,174.82. Had she known that her legal expenses were so high she could have taken steps to minimize these expenses.

The Debtor's objection to the lack of periodic billing overlooks the fact that a first interim fee application was filed after six months in bankruptcy and was granted without objection. Presumably, she received notice of that. However, her complaint about no billing from January 2006 to date is well taken. A lawyer has a duty to communicate with a client about her case. *R.P.C.* 1.4.[1] This includes a duty to inform the client of the legal fees she has incurred. *In re Taylor*, 741 N.E.2d 1239, 1242 (Ind. 2001) (holding that attorney's failure to keep his client apprised of escalating fees amounted to a lack of adequate communication with his client, as

---

[1] Under Rule 103.1 of the Local Civil Rules of United States District Court for the District of New Jersey, "[t]he Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court...." D.N.J. L. Civ. R. 103.1(a). As the bar of the United States Bankruptcy Court for the District of New Jersey consists of attorneys admitted to practice before the United States District Court, the provisions of the Local Civil Rules govern the practice of attorneys in the Bankruptcy Court. D.N.J. LBR 2090-1; *see also*, *In re Star Broadcasting, Inc.*, 81 B.R. 835, 839 (Bankr. D.N.J. 1988).

required by the Rules of Professional Conduct); *see DeGraaff v. Fusco*, 660 A.2d 9, 11-12 (N.J. Super. Ct. App. Div. 1995) (holding that attorney was obligated to keep client fully informed about his financial responsibilities). When she signed the retainer agreement in January 2005, Ms. Buccolo paid $2,000. At that time, $2,000 was the so called "no look fee" that the courts in this district would approve without requiring a detailed fee application for a routine chapter 13 case. D.N.J. LBR 2016-1(j)(I); *In re Szymczak*, 246 B.R. 774 (Bankr. D.N.J. 2000). Ms. Buccolo's case has been anything but routine and she knew that her charges would exceed $2,000. But $49,000 is extraordinarily high in this court's experience for even the most complicated chapter 13 case. It is understandable that Ms. Buccolo would be shocked to receive such a large bill. The failure to communicate by providing periodic bills deprived Ms. Buccolo of the opportunity to manage her expenses. That failure warrants a 20% reduction in fees.

### *Quality of Legal Advice*

Ms. Buccolo complains that the Law Firm gave her bad advice to file bankruptcy in the first place. With an estimated $1,000,000 in assets and $350,000 in debts at the time of filing, she thinks it was a mistake to file bankruptcy. However, Ms. Buccolo neglects to mention that she defaulted on her mortgage leading to a foreclosure judgment and a pending sheriff's sale. In addition, another creditor had obtained a judgment, levied on her house, and had a pending sheriff's sale. At the time of filing bankruptcy, she had a divorce action against her estranged husband, had moved out of the marital residence, but could not get his agreement to sell the house. Her confirmed chapter 13 plan called for the house to be sold despite her estranged husband's protest. If she had been able to accomplish her goals of liquidating her only valuable asset, satisfying her debts, and ending her marriage, filing bankruptcy would have prevented a

5

forfeiture of her substantial equity in her residence. The result obtained is a factor to be considered in determining a reasonable fee. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The plan did not work primarily because the real estate market softened and her estranged husband remained difficult to deal with. At the time the petition was filed, bankruptcy offered Ms. Buccolo certain legal advantages, not the least of which was the automatic stay that stopped two sheriff's sales. 11 U.S.C. § 362(a). Her objection to the quality of the legal advice is overruled.

### *Reasonableness, Necessity, Benefit*

The Debtor objects that the Law Firm's charges are grossly excessive, that much of the work was unnecessary, and that the work was of no benefit to her. Review of the detailed time entries shows that the Law Firm handled several matters from the start of this second interim billing period in January 2006 through the date the case was converted to chapter 7 on June 14, 2006. For example, her estranged husband Bruce filed a motion for relief from the automatic stay so he could ask the matrimonial court to award all or part of the marital residence to him. The Law Firm succeeded in preventing an in-kind distribution of the marital residence in the divorce action until after it could be sold in the bankruptcy case to pay all Ms. Buccolo's creditors. The Law Firm also opposed the husband's motion for reconsideration regarding Ms. Buccolo's house key possession while she did not live in the house.

At the client's request, the Law Firm objected to several of the unsecured claims resulting in a small monetary reduction. It also brought a second motion to have the husband removed from the house due to his lack of cooperation and interference with the sale. In response, the husband cross moved to convert the case to chapter 7 which the Debtor opposed.

6

Because the court thought it would be in the best interest of creditors, as well as the Debtor, to have a neutral third party control the sale of the house, the court converted the case to chapter 7.

All of the charges for legal services from January to June 13, 2006 were necessary to protect the Debtor's interest and were for her benefit. The fact that the house failed to sell and her husband not evicted was not the fault of the Law Firm.

Following conversion of the case to chapter 7 on June 14, 2006, until the Law Firm withdrew as counsel in May 2008, it continued to provide services. It advised the trustee on the background of the case and represented the Debtor at a second hearing under Section 341(a) of the Bankruptcy Code. 11 U.S.C. § 341(a). The mortgagee, Countrywide, moved for relief from the automatic stay to complete foreclosure. The Debtor joined with the Trustee in successfully opposing that motion because of the large equity cushion. Also, the Law Firm investigated whether the husband failed to make mortgage payments as this court had required.

The Trustee experienced problems with her husband's interference in the sale and moved to have him evicted. The Debtor supported the Trustee's successful motion. In response, the husband cross moved to force the trustee to sell to him at substantially below market value. The Debtor objected and the husband's cross motion failed. He appealed to the district court and the court of appeals. In each case, he sought a stay pending appeal that delayed his removal for months. The Law Firm monitored both appeals but did not participate.

In March 2007, Ms. Buccolo's circumstances changed dramatically. She moved back in with her husband and withdrew her divorce complaint because no progress had been made and she felt that was in the best interest of her child. She asked the Law Firm to oppose the Trustee's motion to have her removed from the property, which it did, albeit unsuccessfully. After that the

relationship with the Law Firm collapsed and it sought to be relieved as counsel.

No question has been raised as to the hourly rates charged. Most of the time recorded seems reasonable, except that some of the entries lump numerous tasks together preventing effective reviews, some entries lack sufficient description, and some of the time spent in court seems excessive. *E.g.*, *Hensley*, 461 U.S. at 442 ("[T]he party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed."); *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) ("[A] fee petition should include some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates.") (internal quotes omitted); *In re Beverly Mfg. Corp.*, 841 F.2d 365, 370 (11th Cir. 1988) ("It is clear from the records and exhibits that [the] petition for fees was inadequate. [T]here was no indication of the specific nature of each service performed and its relation to the bankruptcy proceeding. In addition, several entries 'lumped' together different services in one time frame."); *In re Worldwide Direct, Inc.*, 316 B.R. 637, 643 (Bankr. D. Del. 2004) ("[L]umping is not favored because One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together."); *In re Poseidon Pools of America, Inc.*, 180 B.R. 718, 729 (Bankr. E.D.N.Y. 1995) ("[T]he application should explain the outcome of the aforementioned activities and justify their necessity.... Where documentation of services is too vague or

nonspecific to permit meaningful review, a court may not award compensation for such services."). The court will reduce the fees by 10% to account for these billing deficiencies.

Of the fees sought in the amount of $32,260.50, the court will reduce that by ten percent for billing deficiencies and 20% for failure to communicate. The result is an allowance of $22,582.35 in fees plus $215.76 in expenses for a total of $22,798.11. Of this amount, $13,000, shall be allowed as a priority administrative chapter 13 expenses and the balance as a post-petition obligation of the Debtor.

**/S/Raymond T. Lyons**
United States Bankruptcy Judge